DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
CARBAJAL & MCNUTT, LLP
625 South Eighth Street
Las Vegas, Nevada 89101
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@cmlawnv.com
mcw@cmlawnv.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ADRISH BANERJEE, an individual, and YAN HE, an individual, ) ) ) Plaintiffs ) ) vs. ) ) CONTINENTAL INCORPORATED, INC., ) d/b/a CONTINENTAL ENTERPRISES, an ) Indiana Corporation, LEAPERS, INC., a ) Michigan Corporation, and DOES 1-10, ) inclusive, ) ) Defendants. ) | Case No.: 2:17-cv-00466-APG-GWF  **DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)** |

Pursuant to FED. R. CIV. P. 12(b)(6), "Defendants"[1] respectfully move to dismiss Plaintiffs' Complaint (ECF No. 2) with prejudice.

## I.    INTRODUCTION.

This is Plaintiffs' second attempt to bring claims against Defendants for their exercise of First Amendment protected activity – i.e., the reporting of crimes committed by Plaintiffs.  This court dismissed the first attempt in its entirety pursuant to Rule 12(b)(6) (Ex. A, the "Dismissal Order").  Plaintiffs' new complaint drops some original claims, restates others, and adds a handful of new claims.  These restated and newly added claims should suffer the same fate as their first failed attempt to state claims against Defendants.  Having failed to establish the required elements of all claims,

---

[1]    "Defendants" refers to Continental Incorporated, Inc. d/b/a/ Continental Enterprises ("Continental") and Leapers, Inc. ("Leapers").

Plaintiffs' Complaint cannot withstand this motion to dismiss.

## II.   BACKGROUND.

### A.   Continental's Investigation of Plaintiffs and Subsequent Statements to Law Enforcement.

Leapers supplies hunting and shooting products, including rifle scopes.[2]  (ECF No. 2 at ¶ 10) Leapers claim proprietary rights in the design on these scopes.  (*Id.* at ¶ 20) Leapers hired Continental, an Indiana private investigation firm, to investigate unauthorized uses of its design by third parties, including Plaintiffs. (*Id.* at ¶¶ 11, 14, 16, 62)   Leapers and Continental gathered evidence that Plaintiffs were purchasing and selling rifle scopes bearing Leapers' intellectual property under the trade name SNIPER. (*Id.* at ¶¶ 16, 17, 26, 62) Continental purchased several rifle scopes bearing the SNIPER mark for examination. (*Id.* at ¶¶ 26, 62)   The Evansville Police Department evaluated the scopes, executed a probable cause affidavit, and submitted it to the Vanderburgh Superior Court.   (*Id.* at ¶¶ 27-30, 38, 44, 67, 69; Exs. C, D, and E (probable cause affidavits))[3]  After being presented with a sworn affidavit, the Vanderburgh Superior Court issued warrants for the arrest of both Plaintiffs on or about December 5, 2014. (*Id.* at ¶ 69)

On February 14, 2015, Plaintiffs were arrested at an industry show in Las Vegas.  (*Id.* at ¶ 72) Plaintiffs were later released after posting bail. (*Id.* at ¶ 73)  Plaintiffs were later extradited to Indiana, and later released on bond. (*Id.* ¶¶ 75, 79) The charges were eventually dismissed. (*Id.* ¶ 80)

### B.   Plaintiffs File their First Lawsuit against Defendants which Is Quickly Dismissed.

On February 24, 2016, Plaintiffs filed their first complaint (the "First Complaint", attached as Ex. B) against Continental, Leapers, and Does 1-10 in Clark County District Court of Nevada. *Banerjee, et al v. Continental Incorporated, Inc., et al*, 2:16-cv-00669-JCM-VCF (D. Nev.).   On

---

[2]    Defendants treat Plaintiffs' allegations as true only for purposes of this motion.
[3]    Documents specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds). Also, the Court may take judicial notice of matters of public record. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

March 28, 2016, Continental and Leapers removed the case to this federal court. Defendants moved to dismiss pursuant to Rule 12(b)(6).  On October 11, 2016, this Court granted Defendants' motion to dismiss and further ordered that Plaintiffs' amended complaint be dismissed without prejudice.[4] (Ex. A).

**C.     Plaintiffs File the Instant, Second Lawsuit Against Defendants.**

On February 13, 2017, four months later, Plaintiffs filed this action against Defendants attempting to breathe new life into claims already dismissed once by this Court.  (ECF No. 2) (the "Complaint").  The present suit is no different from Plaintiffs' previous failed action except that it reduced the fourteen dismissed causes of action into ten (10) slightly renamed claims.[5]  The "new" allegations remain supported only by conclusory statements and unsupported conspiracy theories.

**D.     Plaintiffs Attempt to Rely on Facts that Are Not Legally Capable of Being Proved.**

Further, Plaintiffs rely on "facts" alleged in their Complaint that are demonstrably false. Namely, Plaintiffs repeatedly state that Defendants "knew" they did not have trademark rights in the scopes, lied to prosecutors and police, and instituted duplicative litigation about this fact.  (ECF No. 2 at ¶¶ 20-21, 32-34, 42, 52, 54, 56, 60-61, 64, 95, 117-119, 130-132, 141, 143).  While the Court must take Plaintiffs' well-pleaded facts as true, "[w]ell pleaded facts refers to those facts which are legally capable of being proved." *Fed. Exp. Corp. v. U.S. Postal Serv.*, 75 F.Supp.2d 807, 811 (W.D. Tenn. 1999) (quotes omitted).  Factual allegations may be disregarded, however, if contradicted by documents to which the court may properly refer.  *Durning v. First Boston Corp.*, 815 F.2d 1265,

---

[4]      The operative pleading at the time of the dismissal of the earlier action asserted the following fourteen causes of action: (1) constitutional rights violation under 42 U.S.C. § 1983;  (2)  abuse  of process;  (3)  false imprisonment; (4) defamation; (5) intentional infliction of emotional distress; (6) civil conspiracy; (7) negligence; (8) malicious prosecution under 42 U.S.C. § 1983; (9) malicious prosecution under common law; (10) Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1964; (11) RICO under NRS 207.470; (12) tortious placing in false light; (13) interference with prospective economic advantage; and (14) respondeat superior liability of Leapers.

[5]      (1) Interference with prospective economic advantage, (2) antitrust pursuant to 15 U.S.C. §§ 1 and 15, (3) antitrust pursuant to N.R.S. 598A.210, (4) defamation, (5) false light, (6) false arrest and imprisonment, (7) malicious prosecution, (8) 42 U.S.C.  § 1983 (color of law), (9) civil conspiracy, and (10) negligence.

1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).   Here, Plaintiffs intentionally misstate facts.   Defendants did not allege to prosecutors or police that Leapers was the owner of "trademark" rights, rather they alleged ownership of rights related to the "markings and symbols of identification" on the scopes.  (*See* Exs. C-E.)  The PC Affidavits do not use the word "trademark" or "trade dress."    Instead, they repeatedly states that Defendants provided information as to the "markings and symbols of identification" owned by Leapers.[6]    Under Indiana law, a person may have a proprietary interest in markings and symbols of identifications, rights that are separate and distinct from trademark rights.  *Leapers, Inc. v. Trarms, Inc., Presma, Inc., and Chuanwen Shi*, 1:15-cv-01539 Dkt. 73, August 23, 2016.  Plaintiffs' attempt to rely on "facts" that are not legally capable of being true should be rejected.

### III.   LEGAL ARGUMENTS.

### A.   Standard of Review Under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) is designed to test the sufficiency of the complaint. *Hansen v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1340002, *1 (D. Nev. Apr. 1, 2013) (citing *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)).  To avoid a rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The mere possibility of liability is insufficient. *Id.* Even when presumed to be true, factual allegations are insufficient when they are

---

[6]      Plaintiffs even go so far to inaccurately state that a federal trademark registration is the "*sine qua non* of trademark rights" (ECF No. 2, ¶42), a statement that is blatantly false and contrary to well-established trademark law.  Trademark rights arise from use, not federal or state registration.  All a federal registration provides is a rebuttable presumption of validity and access to certain statutory damages. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

"*merely consistent with* a defendant's liability," or are subject to an "obvious alternative explanation." *Id.* at 682 (emphasis added).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice….[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 678-79 (internal citations and quotations omitted). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

**B.      Plaintiff's Tortious Interference Claim Should be Dismissed (Count I).**

Plaintiffs once again fail to adequately plead the existence of prospective contractual relationship between them and a third party.[7] This count was previously dismissed by this Court for the following reasons:

> Here, plaintiffs have failed to sufficiently state a claim for wrongful interference with prospective economic advantages. Specifically, plaintiffs have failed to allege that defendants intended to harm plaintiffs by preventing the prospective relationship or that defendants lacked a justification. Further, plaintiffs have failed to allege actual harm as a result of defendants' conduct.

(Ex. A, p. 15). Comparison of the First Complaint and the pending Complaint reveals no meaningful difference. The following allegations were determined insufficient by this Court already:

- Defendants "were aware of Plaintiffs' business relations with certain customers." (Ex. B, ¶ 126)
- Defendants "were aware that Plaintiffs' customers and potential [sic] would be and were in attendance at the trade show where Plaintiffs were arrested." (*Id.* at ¶ 127)
- "The actions of [defendants] alleged herein were intended to interfere with Plaintiffs' potential economic advantages from Plaintiffs' relations with existing and potential customers." (*Id.* at ¶ 128)

---

[7]      The elements of a tortious interference with prospective economic advantage claim are:  (1) a prospective contractual relationship between plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm as a result. *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).

Plaintiffs' pending Complaint is really no different, containing the following material allegations on pages 13-14:

- Defendants "were aware of Plaintiffs' business relations with certain customers." (ECF No. 2 ¶ 84)
- Defendants "were aware that Plaintiffs' customers and potential customers would be and were in attendance at the trade show where Plaintiffs were arrested." (*Id.* ¶ 85)
- "The actions of [defendants] were the but for cause of Plaintiffs being charged, arrested and incarcerated, and were the but for cause of Plaintiffs being arrested in the middle of the show." (*Id.* at ¶ 86)
- "The actions of [defendants] alleged herein were intended to, and did, interfere with Plaintiffs' potential economic advantages from Plaintiffs' relations with existing and potential customers." (*Id.* at ¶ 87)
- "The Defendants' tortious interference was the cause of Plaintiffs being damaged by substantially decreased sales and revenue." (*Id.* at ¶ 88)
- "The actions and conducts of Defendants were done knowingly, intentionally, with malice, and with conscious disregard for the rights of, and damages that would be inflicted on Plaintiffs." (*Id.* at ¶ 89)

The highlighted text represents the only new allegations, and they fail to cure the pleading problems identified previously by the Court. The allegations concerning intent to harm are really no different than the original pleading, thus meaning that more is required. For example, Plaintiffs allege no facts showing a likelihood that any of these parties would have entered into any future agreements with Plaintiffs. *See Capitol West Appraisals*, 467 Fed.Appx. at 740. [8]   The Complaint also does not identify a single contract that Plaintiffs did not or could not have entered into. Moreover, there

---

[8]     Allegations stating the presence of existing and potential customers are insufficient to plead the existence of a "prospective contractual relationship" or to that a defendant was aware of such relationship. *See Capitol West Appraisals, LLC v. Countrywide Fin. Corp.*, 467 Fed.Appx. 738, 740 (9th Cir. 2012) (dismissing claim where conclusory statements that "[defendant] had knowledge of economic relationships between [plaintiff] and mortgage brokers and lenders without any further specific allegations" were insufficient to plead defendant's knowledge); *see also Masco Contractor Servs. E., Inc. v. Beals*, 279 F.Supp.2d 699, 709 (E.D. Va. 2003) (dismissing claim for interference with prospective economic advantage where claim merely alleges interfering with consumers generally); *Gianni Versace, S.P.A. v. Versace*, 2003 WL 470340, *2 (S.D.N.Y. Feb. 25, 2003) ("[A] properly pleaded counterclaim for this tort must allege relationships with specific third parties with which the respondent interfered"); *DeRobbio v. Harvest Communities of Sioux City, Inc.*, 2002 WL 31947203 (D.N.J. Oct. 30, 2002) (dismissing claim due to failure to allege specific business relationship that was harmed).

remain no allegations concerning a lack of justification or privilege.   Regardless of whether Defendants were the cause, Plaintiffs must allege that Defendants' actions were not privileged or justified.  Plaintiffs' failure to plead this element, once again, is fatal to their claim.

**C.    Plaintiffs Do Not State an Anti-Trust Claim Under 15 U.S.C. §1 and 15[9] (Count II).**

    1.   Plaintiffs' Antitrust claim is barred by the *Noerr-Pennington* Doctrine.

Defendants' actions in providing information to Indiana prosecutors and filing suit against Plaintiffs in Indiana under the Indiana Crime Victims Recovery Act cannot be the basis of Sherman Act liability because it is protected by the *Noerr-Pennington* doctrine.  Under *Noerr-Pennington*, a defendant is immune from antitrust liability for engaging in conduct—including litigation—aimed at influencing the government's enforcement of the law.  *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).[10]   In *Thomas v. Housing Authority of County of Los Angeles*, 2006 WL 5670938, *10 (C.D. Cal. 2006), the court held it must dismiss the plaintiff's claims as barred by the *Noerr-Pennington* doctrine to the extent they were premised on the filing and prosecution of an unlawful detainer action, efforts to settle that action, and any investigation that led to the filing of the action.  The *Thomas* court cited to *Smith v. Combustion Engineering, Inc.*, 856 F.2d 196 (1988) (unpublished table case) to support this holding.  In *Smith,* the court upheld the district court's implementation of the *Noerr-Pennington* doctrine when the defendant provided prosecutors with information on a competitor out of a "desire to protect what it, rightly or wrongly, believed to be its own product or trade secret." *Id.* at *3.  In the same situation here, Leapers and Continental are immune from Sherman Act liability for their cooperation with Indiana prosecutors.

Similarly, the *Noerr-Pennington* doctrine protects defendants from Sherman Act liability when they sue a competitor, as Leapers did here in suing Plaintiffs.  *See Professional Real Estate*

---

[9]    Plaintiffs allege violations per se violation and under the rule-of-reason. The arguments for dismissal of this claim apply to both.

[10]    The doctrine exists to protect a defendant's First Amendment right to petition the government to redress grievances.  *Id.*; *see also Empress LLC v. City and County*, 419 F.3d 1052, 1056 (9th Cir. 2005).

1    *Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993) (acknowledging *Noerr-*

2    *Pennington* doctrine extends to "the approach of citizens to courts") (internal quotation omitted).

3           There is one narrow exception to this doctrine for "sham" litigation.  *See Octane Fitness, LLC*

4    *v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) (describing the exception as "narrow").

5    Under this narrow exception, a party is not protected from Sherman Act liability if its "activity

6    ostensibly directed toward influencing governmental action . . . is a mere sham to cover an attempt to

7    interfere directly with the business relationships of a competitor." *Id.* (internal quotations omitted).

8    But this exception only applies to "objectively baseless" lawsuits. *Id.* (internal quotations omitted).

9    "In other words, the plaintiff must have brought baseless claims in an attempt to thwart competition

10   (i.e., in bad faith)." *Id.*

11          This is not the case here.  Plaintiffs may argue that their Antitrust claim fits into this narrow

12   exception, but Plaintiffs cannot show that Defendants' claim against Plaintiffs were objectively

13   baseless.  Indiana law uniquely recognizes proprietary rights in "markings" or "objects or symbols of

14   identification", and criminalizes as theft, conversion and forgery any unlawful use of those property

15   rights by third-parties.  I.C. § 34-24-3-1 *et. seq*; *see also An-Hung Yao v. Indiana*, 975 N.E.2d 1273

16   (Ind. 2012) (holding that markings or other objects or symbols of identification are subject to

17   Indiana's theft, conversion, forgery, and counterfeiting statutes regardless of civil trademark law).

18   Here, Leapers engaged Continental, a private investigation firm specializing in intellectual property

19   investigations, to protect what Leapers believed to be its own markings or object or symbols of

20   identification, consistent with Indiana law and the Supreme Court's holding in *Yao*.  Because these

21   rights are not only codified by Indiana statute, but have also been affirmed by the Indiana Supreme

22   Court, Leapers' claim is neither "baseless" nor a "sham" litigation aimed only to thwart competition.

23   Moreover, TRARMS and Shi both moved to dismiss the ICVRA suit against them, making the

24   argument that the lawsuit was baseless for all the reasons asserted in the pending Complaint by

25   Plaintiffs.  Those arguments were rejected by the Southern District of Indiana, Judge Sarah Evans

Barker.[11]   The legal allegations made against Plaintiffs for forgery, conversion, and theft were not objectively baseless.

Just as the defendant in *Smith*, Leapers filed suit and engaged Continental to "protect what it, rightly or wrongly, believed to be its own product or trade secret."  856 F.2d 196, at *3.  This is not "baseless," "sham" litigation aimed only to "thwart competition."  *Octane Fitness*, 134 S.Ct. at 1757.  In an unavailing attempt to avoid the *Noerr-Pennington* doctrine, the Complaint asserts that "[t]he civil suits against Trarms, Mr. Shi, and Trarms' customers, and the communications Leapers and Continental had with the Indiana police and prosecutor were shams, not done in pursuit of justice, but for the purpose of restraining trade by precluding Trarms from the market.  Defendants' . . . initiated and maintained objectively baseless 'sham' litigation against Trarms, Shi and others . . . constitut[ing] a pattern of abusive filings made without regard to the merits."  (ECF No. 2 ¶61).  But this is conclusory and unsupported with facts other than Trarms' disapproval.  This does not avoid the general rule that the sham exception "encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."  *Omni Outdoor Advertising,* 111 S.Ct. at 1354.   Plaintiffs' complaint does not meet the sham litigation standard, and these claims are barred by the *Noerr-Pennington* doctrine.

### 2. The Alleged Conspirators are Not Competitors

To constitute a violation under Section 1 of the Sherman Act, the concerted act must be among competitors.[12]  If two companies are not competitors, "they [cannot] conspire . . . for antitrust purposes." *American Council*, 185 F.3d at 620.

Leapers is "engaged in the sale of rifle scopes," and Continental is a "private investigation

---

[11]     A true and correct copy of this Order is attached as Ex. F.

[12]     *See Hosley v. National Pygmy Goat Association*, 2014 WL 12508594, *2 (S.D. Cal. 2014) (court held that plaintiff must plead activities that constitute concerted action among market competitors to sustain claim under Section 1)*; see also American Council of Cert. Podiatric Physicians & Surgeons v. Am. Bd. of Pod. Surgery, Inc.*, 185 F.3d 606, 620 (6th Cir. 1999) (internal quotation omitted).

firm." (ECF No. 2 ¶¶ 10 &11)    These companies are plainly not competitors, nor have Plaintiffs alleged they are. Here, Leapers cannot "conspire" with Continental, its agent.

3.  <u>Plaintiffs Do Not Allege a Restraint on Trade or Commerce</u>

By Section 1's plain language, it only governs actions that are commercial in nature. *Manwin Licensing Intern. S.A.R.L. v. ICM Registry, LLC*, 2012 WL 3962566, *5 (C.D. Cal. 2012). This requirement is not satisfied simply because Leapers is engaged in a commercial business or market, *id.*, or because Plaintiffs' alleged damages might be commercial in nature, *Bassett v. National Collegiate Athl. Ass'n*, 528 F.3d 426, 433 (6th Cir. 2008). Rather, Defendants' alleged actions in restraint of trade must be commercial. *Id.* Examples of commercial action likely to give rise to Sherman Act liability are price fixing and agreements to exclude a competitor from a market. *See Care Heating & Cooling*, 427 F.3d at 1012.

The Complaint is devoid of any such commercial allegations. Plaintiffs allege that Leapers has aggressively defended what it believes to be its property rights, and hired Continental to assist it in doing so. The alleged infringing conduct includes filing "sham" lawsuits, violating the Indiana Rules of Professional Conduct, assisting Indiana prosecutors in a criminal prosecution, and sending letters asserting Leapers' trade rights to distributors.  These allegations do not encompass a "restraint of trade or commerce" akin to price fixing. 15 U.S.C. § 1. Moreover, Plaintiffs never allege that Leapers has sought to prevent Plaintiffs (or anyone else, for that matter) from selling rifle scopes or any other product; rather, Leapers has simply challenged the use of particular markings on those scopes. Plaintiffs have always remained free to compete by selling scopes with markings that do not copy Leapers' markings, and Plaintiffs do not (and could not) allege that coming up with their own markings imposes any commercial harm on them.

4.  <u>Plaintiffs Allege Harm Only to Themselves, Not to Competition</u>

An antitrust injury must stem from the Sherman Act's "protection of *competition*, not *competitors*." *Atlantic Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 338 (1990) (emphasis in

original). This means Plaintiffs "must plead an injury to competition beyond the impact on the plaintiffs themselves." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012). A plaintiff's claim should be dismissed unless it alleges "injury to the market or to competition in general, not merely injury to individuals or individual firms." *McGinchy v. Shell Chemical Co.*, 845 F.2d 802, 812 (9th Cir. 1988). The Complaint falls far short of this standard. Plaintiffs never allege any facts showing how *competition* has been or will be harmed. Instead, the allegations were solely about harm to Plaintiffs. (ECF No. 2 ¶¶ 55, 57, 95, 96, 97, 99) Plaintiffs cannot bring an antitrust claim based on the mere contention that *they* have been harmed, when competition among other competitors continues unabated.

5. Plaintiffs Fail to Properly Identify the Relevant Market

Antitrust plaintiffs must allege facts sufficient to identify a legally cognizable relevant product market that is consistent with the facts and circumstances of the case at hand. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)*; Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (plausibility); *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008). A relevant market must be a "product market," must encompass the product at issue as well as all economic substitutes for the product, and/or consist of a submarket. *Id*. Plaintiffs must plead and prove specific facts that delineate the alleged product market's boundaries. *Id.* A complaint may be dismissed pursuant to Rule 12(b)(6) if the complaint's relevant market definition is facially unsustainable. *In re Webkinz Antitrust Litigation*, 695 F.Supp.2d 987, 994 (N.D. Cal. 2010). This requirement again makes common sense; without a properly defined market, the Court cannot assess any alleged anticompetitive effects.

But Plaintiffs do not meet this requirement. Instead, their identification of relevant market consists solely of the following: that Leapers and TRARMS "were competitors in the market for 'low end', i.e., lower priced, rifle scopes" (ECF No. 2 ¶ 92) This falls well short of presenting specific facts to clearly delineate the alleged geographic market. Plaintiffs identify only minimal

members of the market, do not provide any specific facts regarding the size of the market, and do not identify the members' respective shares of the market.  Identification of the product does not satisfy the plausibility and pleading requirements under *Twombly*.

**D.    Antitrust Pursuant to NRS 598A.210 (Count III).**

Plaintiffs allege a violation of NRS 598A.210 generally, but fail to make any allegation as to which section of this statute it alleges Defendants have violated.[13]

NRS 598.060 is "construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."  *Id.* § 598A.050.  Because Nevada has adopted federal antitrust case law by reference, if the Complaint fails to satisfy the Sherman Act pleading requirements, then it surely also fails to properly allege claims under NRS 598A.210.

**E.    Plaintiffs Fail to State a Defamation Claim (Count IV).**

Plaintiffs allege a narrow claim for defamation[14], based entirely on the allegation that they were defamed by "having committed a crime by conduct or pantomime" when they were "arrested at the trade show in the view of customers and others in the crowd."  (ECF No. 2 ¶ 107)

1.    If no arrest of Plaintiffs was effected by Defendants, then no defamation by pantomime.

Plaintiffs make no allegation that either of the Defendants detained the Plaintiffs prior to their arrest.  Instead, they concede that the arrest was performed solely by members of the Las Vegas Metropolitan Police Department.  (ECF No. 2 ¶ 72, "Plaintiffs were arrested, placed in handcuffs and escorted by the police out of the gun show in front and in full view of their prior and potential

---

[13]    Plaintiffs make the generic allegation that the "wrongful acts of Defendants were an attempt to monopolize and restrain trade and prohibited acts pursuant to NRS 598.060 . . ." (ECF No. 2 ¶103) This seems to indicate an allegation under NRS 598.060(1)(e), and the other sub-sections do not appear implicated by the facts pled in the Complaint.  Accordingly, Defendants will treat this claim as if it were pled specifically as under sub-section (e).

[14]    A claim for defamation requires four elements: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."  *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).

customers."). Although Nevada recognizes defamation by pantomime, no reported[15] opinion has ever held that theory to apply to any private citizen except where that private citizen (and not the police) detained the plaintiff in full view of the public sufficient to impute the plaintiff as participating in a crime. *See K-Mart Corp. v. Washington*, 866 P.2d 274 (Nev. 1993) (store employee's act of handcuffing customer suspected of shoplifting, then marching customer through store to security office, constituted slander per se) ;[16] *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) (involving a casino security employee involved in the detention on the casino floor). The pantomime theory of liability thus fails as to Defendants.

2. The Allegedly Defamatory "Statements" Were Substantially True

Plaintiffs must show that Defendants made a false and defamatory statement of fact concerning the Plaintiffs. *Pope*, 24 114 P.3d at 282. This imposes on Plaintiffs the burden to prove absolute falsity. *See Vail v. Pioneer Mutual Life Ins. Co.*, 2010 WL 3951916, * 1 (D. Nev. 2010). "A statement is not defamatory if it is absolutely or substantially true." *Id.*

In dismissing the earlier complaint, this Court found that Plaintiffs failed to "assert that their rifle scopes were in fact legitimate [or to otherwise] dispute that the scopes were counterfeit." (Ex. A, p. 8). In doing so, the Court completely rejected the following as a sufficient basis to survive

---

[15] There does exist the unpublished opinion of *Conboy v. Wynn Las Vegas, LLC*, 2013 WL 1701073 (April 18, 2013) which dealt with this issue. In that case, there was a factual dispute over whether the casino security officer or the police officer first handcuffed the plaintiff. Judge Mahan denied the casino's motion for summary judgment on this fact issue over who it was that led the plaintiff to the casino's security room ("Since the basis of plaintiff's slander per se claim is based on *who* handcuffed plaintiff and/or *who* caused plaintiff to be handcuffed; there remains a genuine issue of material fact as to whether Encore security officers or police officers handcuffed plaintiff."). It appears from the unpublished opinion that Judge Mahan took particular interest in the fact issue over who it was that actually handcuffed the plaintiff, and that would be consistent with the argument advanced here by Defendants. Defendants submit that there cannot be (nor should there be) a claim for defamation against a private citizen for a public arrest that was conducted and effected entirely by law enforcement, especially where the plaintiff (as here) admits that the arrest was conducted entirely by the Las Vegas Municipal Police Department (ECF No. 2 ¶ 72).

[16] Receded from on other grounds by *Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005); concerning whether statements made to police before the initiation of criminal proceedings could be deemed "communications preliminary to a judicial proceeding" under the Restatement (Second) of Torts, section 587.

dismissal: "'the statement that [p]laintiffs' products were 'counterfeit' was a false and misleading statement to the police' because defendants failed to disclose that Leapers allegedly owned no registered trademarks.'" *Id.* In the Complaint, Plaintiffs make no meaningful effort to expand beyond this allegation, stating essentially the same allegations in paragraphs 27-32, culminating in the allegation in paragraph 33 that "Continental's statements of those facts [to law enforcement], which were false and misleading, were later included in an affidavit and in a certification provided to the police and prosecutor." Thus, just more of the same fatally flawed language.

Plaintiffs are likely to turn for cover in the allegations found in paragraph 34 of their Complaint, where they identify a number of "facts" they claim were "omitted" from information provided to law enforcement. None of these facts, standing alone or together, render any affirmative statements attributed to Defendants as defamatory are substantially untrue. Further, taking each "fact" in turn, none actually show that Defendants' statements concerning the counterfeit nature of the offending products are false.

- *Charlie Shi is the designer of the "scalloped" feature*. This has nothing to do with whether there was a violation of the unique Indiana law at issue for copying distinctive markings of identification used by Leapers in their products. More importantly, Plaintiffs make no allegation explaining how being the designer defeats Leapers' claims of counterfeit.
- *No Court has decided that "scallops on a scope" is protectable*. There is no such requirement, and Plaintiffs fail to make any allegations explaining the relevancy.
- *Leapers had never applied for federal trademark protection*. This ignores the existence of common law rights. It more importantly ignores that Plaintiffs were not arrested for violation of registered or unregistered trademark rights. They were arrested for violating Indiana's state law on markings of identification.
- *Leapers did not have a state trademark registration*. Again, such a registration is unnecessary and irrelevant to the bases for the arrests.

Most importantly, none of these allegations solve the basis for the original dismissal – namely that the Defendants' statements were false. Identification of these alleged omissions, without allegations providing a basis for understanding their materiality, or otherwise having a basis for legal relevancy, is insufficient to establish untruth of the allegations said to be made by Defendants.

3.  <u>Plaintiffs Do Not Allege the Statements were Not Privileged.</u>

Additionally, just as they failed to do for wrongful interference with prospective economic advantage, Plaintiffs fail to allege an absence of privilege in Defendants' actions as is required to state a claim.  Instead, Plaintiffs merely allege that Defendants were the "but for cause of Plaintiffs being arrested in the middle of trade show."  Regardless, Plaintiffs must allege that Defendants' actions were not privileged.  Plaintiffs' failure to plead this element is fatal to their claim.

**F.      Plaintiffs Fail to Make a False Light[17] Claim (Count V).**

1. <u>Insufficient allegations of falsity</u>.

This tort was dismissed by this Court in the earlier complaint for the same reason the defamation count was dismissed – failure to state sufficient facts that Plaintiffs' "rifle scopes were legitimate and not counterfeit." (Ex. A, p. 15)  False light requires an implicit false statement of objective fact.  *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002).  For all the reasons discussed above, this claim must be dismissed again.

2. <u>Insufficient allegations of mental distress</u>.[18]

As this Court ruled previously, "In Nevada, 'the injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation.'" *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002).  Here, Plaintiffs have not adequately pled mental distress damages.  Specifically, Plaintiffs allege that "[a]s a direct and proximate result of Defendants placing Plaintiffs in false light, Plaintiffs suffered . . . loss of income, damage to reputation and emotional distress." (ECF No. 2 ¶ 113.)  Plaintiffs, however, do not allege

---

[17]      To plead a false light claim, a plaintiff must allege that (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light would be highly offensive to a reasonable person, and (3) the defendant had knowledge of, or acted in reckless disregard as to, the falsity of the publicized matter and the false light in which the plaintiff would be placed.  *Vail v. Pioneer Mut. Life Ins. Co.*, 2010 WL 3951916, *2 (D. Nev. Oct. 6, 2010).

[18]      In Plaintiffs' First Complaint, they alleged Intentional Infliction of Emotional Distress.  This Court dismissed that claim and it has not been repled in this action.

the requisite physical injury or illness caused by the alleged emotional distress. *See Dobson*, 2014 WL 553314, *6 (dismissing false light claim where plaintiffs did not allege physical injury or illness caused by emotional distress); *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). Accordingly, Plaintiffs have not adequately pled the requisite damages for a false light claim.

       3.   Insufficient allegation of direct control.

Plaintiffs fail to allege that Defendants gave publicity to this matter where law enforcement carried out the public arrest. There is simply no fact-based allegation that Defendants controlled law enforcement or had the right to direct law enforcement as to how to effectuate the arrests of Plaintiffs. Leapers' communications with police preceding the arrest are not actionable as false light. *Adams v. McDonald*, 2008 WL 3874825 (D. Nev. Aug. 15, 2008); *see also Hall v. Pizza Hut of America, Inc.*, 396 N.W.2d 809, 818 (Mich. Ct. App. 1986) (rejecting false light claim where defendant's "communication was limited solely to a telephone call to the police and the act of pointing out the plaintiffs once the police arrived... [S]uch a communication was a right and privilege secured by the constitution.").

**G.    Plaintiffs Do Not State a Valid False Arrest or False Imprisonment Claim (Count VI).**

Plaintiffs admit in the complaint that Defendants did not affect Plaintiffs' arrest. A private party can only be held liable for false imprisonment if that party "instigated or effected an unlawful arrest." *Nau v. Sellman*, 757 P.2d 358, 360 (Nev. 1988). There is no allegation that either of Defendants actually took Plaintiffs into custody.[19] As such, this claim is ripe for dismissal. *Cerros v. North Las Vegas Police Dep't.*, 2006 WL 3257164, *3 (D. Nev. Nov. 9, 2006) (dismissing a false imprisonment claim where the complaint failed to allege that the defendant actually participated in the

---

[19]    "It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Nau*, 757 P.2d at 360 (citing 1 R.2d (Torts) Section 45(A), Comment c, p. 70); *see also Pitti v. Albertsons, LLC*, 2012 WL 1931243, *4 (D. Nev. May 29, 2012) (dismissing claim where no evidence defendants physically held plaintiff).

arrest or that he effected the arrest).

Plaintiffs' factual allegations relating to Defendants' contacts and communications with law enforcement in Indiana are not new.  Nor are the allegations concerning alleged "coordination" of the arrest.  These facts were specifically plead in the dismissed First Complaint under Count III, and were presumably considered by the Court in its Dismissal Order.  There is nothing new in the pending Complaint, and the operative facts related to who effected the arrest are not in dispute – it was the Las Vegas Police Department acting on information provided by Defendants.  This is insufficient to state a claim for false imprisonment.

## H.    Plaintiffs Fail to Allege a Plausible Malicious Prosecution Claim (Count VII)

This claim pertains only to Plaintiffs' criminal prosecution in Indiana.[20] "[A] judicial determination of probable cause in a criminal proceeding [is] prima facie evidence of probable cause in a subsequent civil lawsuit alleging malicious prosecution."[21] *Ali v. Alliance Home Health Care,* 53 N.E.3d 420, 432 (Ind. Ct. App. 2016); *City of New Haven v. Reichhart*, 748 N.E.2d 374, 380 (Ind. 2001) (dismissing plaintiff's malicious prosecution claim after finding probable cause in taxpayer challenge). Here, the Indiana court's determination of probable cause—which Plaintiffs do not and cannot allege Defendants controlled—undercuts Plaintiffs' claim as a matter of law. *See City of New Haven,* 748 N.E.2d at 380.  The gravamen of Plaintiffs' complaint is that the "defendants knowingly provided false information to the sheriff's office", but absent facts that there was no probable cause (which cannot be shown due to the probable cause affidavit filed by the Indiana police), this court has

---

[20]    Under Nevada choice-of-law principles, Section 155 of the Second Restatement applies to malicious prosecution claims and provides that "the local law of the state where the proceeding complained of occurred" governs. Restatement (Second) Conflict of Laws, § 155.  *See Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 2010 WL 4339368, *2 (D. Nev. 2010).  Here, the proceeding – namely, the criminal prosecution against Plaintiffs – was pending in Indiana.  As such, Indiana law applies to this claim.

[21]    To establish malicious prosecution under Indiana law, Plaintiffs must show: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Sneed v. Rybicki*, 146 F.3d 478, 480-81 (7th Cir. 1998).

already concluded that the claim cannot stand. (Ex. A, p. 12). Further, and dispositively, as this Court opined in dismissing the earlier complaint, "defendants did not prosecute plaintiffs, nor did they have the authority to do so." *Id.* Accordingly, Defendants fail to state a claim for malicious prosecution.

## I. Plaintiffs fail to state a claim for which relief can be granted under 42 U.S.C. § 1983 (Count VIII).

Here, Plaintiffs allege violations of the 4th and 14th Amendments as the basis for this claim. Such a claim requires sufficient allegations that these acts were committed by Plaintiffs acting under the color of state law." *Johnson v. Gibbons*, 2010 WL 4255430, *1 (D. Nev. Oct. 8, 2010) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### 1. Plaintiffs do not plausibly allege Leapers and Continental were State Actors.

Plaintiffs have alleged no conduct by Leapers or Continental that would constitute state action.[22] The Ninth Circuit recognizes three tests to determine if a private party acted under color of state law: (1) the joint action test, (2) the symbiotic relationship test, and (3) the public function test. *Brunette v. Humane Society of Ventura Cty.*, 294 F.3d 1205, 1210 (9th Cir. 2002). The joint action test requires that a private party's actions be "inextricably intertwined" with the state's actions. *Trzaska v. Int'l Game Tech.*, 2011 WL 2516931, *3 (D. Nev. June 23, 2011). A conspiracy between the private party and the state can satisfy this test "if there is '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* (quoting *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)). However, "the private actor needs to have some control over the state actors' decision making." *Id.* (citing *Arnold v. IBM Corp.*, 637 F.2d 1350, 1357 (9th Cir. 1981)).[23]

---

[22] *See Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (private parties do not generally act under color of state law for Section 1983 purposes, and conclusory allegations that a private party conspired with a state actor to deprive a plaintiff of constitutional rights are insufficient to state a claim); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 391 (E.D.N.Y. 2013) ("Only in limited circumstances will courts recognize that a private individual may be subject to liability under Section 1983.").

[23] The symbiotic relationship test requires that the government "so far insinuated itself into a position of interdependence [with a private entity] that it must be recognized as a joint participant in the challenged activity." *Trzaska*, 2011 WL 2516931 (quoting *Burton v. Wilmington Parking*

Here, Plaintiffs allege that Defendants' actions were done under color of law. (ECF No. 2 ¶140) They allege that there was "a conspiracy, an agreement, or a meeting of minds among Defendants and the Indiana police and prosecutor." (ECF No. 2 ¶ 147)  This alleged conspiracy is based on the allegation that:

> (1) With knowledge of Leapers financial interest, the police and prosecutor acted to have Mr. Shi arrested and prosecuted without any independent investigation to verify the evidence provided or engaged in any independent consideration and determination about probable cause; (2) that this conduct was repeated in the cases of Banerjee, He, Sui, and Lujan Shi; (3) the detective's disregard of the fact that the boxes had already been opened prior to his arrival; and (4) the prosecutor's requesting, and receiving from Continental, legal opinion and advices on prosecution Mr. Shi and others.

*Id.*  However, "the mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983[,]" even if that information provided is false.  *Lockhead v. Weinstein*, 24 Fed.Appx. 805, 806 (9th Cir. 2001).[24]

Plaintiffs do not allege that Defendants and the police department had an agreement to "inflict an unconstitutional injury" on Plaintiffs and do not allege that Leapers or Continental had any control over the state's actions. All Plaintiffs allege factually is that "Continental had significant influence with respect to the actions of the authorities" (ECF No. 2 ¶ 148), but then blindly conclude that this rose to the level of a "conspiracy, an agreement or a meeting of the minds" between Defendants, the Indiana police and prosecutor (ECF No. 2 ¶ 147).  The allegation that Continental and the Indiana police and prosecutor communicated often is not evidence of collusion – police and prosecutors keep

---

*Authority*, 365 U.S. 715, 725 (1961)).  Plaintiffs have not alleged any activity that would rise to a level that would be considered a "position of interdependence."  *See id.* (providing information to the police does not rise to level of "interdependence").  The public function test requires that the private action be "traditionally considered to be the 'exclusive prerogative' of the state."  *Id.*  Plaintiffs likewise do not allege that Defendants' actions are traditionally considered to be the exclusive prerogative of the state. Plaintiff's allegations do not satisfy the public function test because "[p]roviding information to the police cannot be considered to be a function of the state, much less the 'exclusive prerogative' of the state."  *Id.*

[24]    *See also Radcliffe Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001) ("[A] relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy."); *Schneider v. City of Redmond*, 2007 WL 915176, *3 (D. Oregon Mar. 23, 2007) ("[P]roviding false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under section 1983.") (citation omitted).

victims of crimes apprised of investigations and prosecutions.  More is required.  *See, e.g., Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2009) (dismissing § 1983 claim where plaintiff failed to allege "that state officials knew that the police reports were based on false information, or facts from which it could be inferred that such state officials conspired with defendants").  Thus, Leapers's and Continental's acts in providing the police department with information, even if the information was false and was relied upon in making the decision to arrest Plaintiffs, does not constitute "state action."

Plaintiffs further allege that Defendants coordinated and facilitated Plaintiffs' arrest by communicating information about Plaintiffs' whereabouts to the Vanderburgh County Sheriff's Office and/or other federal or state agencies.   These allegations simply support that Leapers and/or Continental, again, merely provided information to the Sheriff's Office.  *See Faust v. Walt Disney Co.*, 2000 WL 635454, *4 (N.D. Cal. May 2, 2000) (mere cooperation with the police "does not prove a conspiracy to violate a litigant's civil rights").  Plaintiffs do not allege that Leapers or Continental physically arrested or attempted to restrain Plaintiffs or that Leapers or Continental directed the police to arrest Plaintiffs.  As such, Plaintiffs have not plausibly alleged that Leapers or Continental acted "under color of state law."

2.  Plaintiffs Fail to Allege a Violation of Fourth and Fourteenth Amendment Rights.

In the event this Court concludes that Plaintiffs did plausibly allege that Leapers and/or Continental acted as a "state actor", Plaintiffs must also plausibly allege a violation of their constitutional rights.  Here, Plaintiffs allege that they were "deprived of their rights under the Fourth and Fourteenth Amendments of the United States Constitution."   (ECF No. 2 ¶ 152) However, Plaintiffs fail to plead a deprivation of any Fourth and Fourteenth Amendment rights.

In *Gunter v. Meeks*, this Court dismissed a civil rights action wherein the plaintiff claimed that his arrest and prosecution without probable cause deprived him of his constitutional right to liberty in violation of the Fourteenth Amendment's due process clause.  2013 WL 5493270, *3 (D. Nev. Sept. 30, 2013).  The Court explained that it is the Fourth Amendment that establishes protections applicable

to arrests, and, therefore, the plaintiff's reliance on the Fourteenth Amendment was misplaced.  *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 268 (1994) (refusing to recognize a substantive right under the Fourteenth Amendment's due process clause to be free from criminal prosecution except upon probable cause).   Thus, Plaintiffs have not properly alleged a deprivation of their Fourteenth Amendment rights.

The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Cont. amend. IV. "A claim for unlawful arrest is cognizable under [section] 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964–65 (9th Cir. 2001) (quoting *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993)). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Dubner*, 266 F.3d at 966 (quoting *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992)).

In *Varela v. San Francisco City & Cty.,* the Plaintiff failed to allege his Fourth Amendment rights were violated, thus not pleading a cognizable legal theory.  Plaintiff's claim was to be judged under FRCP 8(c) which requires "a short and plan statement of the claim showing that the pleader is entitled to relief."  However, the Plaintiff's claim failed as a matter of law.  2006 WL 3747179, at *2 (N.D. Cal. Dec. 14, 2006).

To establish liability for a conspiracy between a private actor and a state actor a plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be liable, ... each participant must at least share the common objective of the conspiracy." *Morrow v. Target Dep't Stores*, 2014 WL 551258, at *5 (D. Nev. Feb. 10, 2014) (citing *Crowe v. County of San Diego,* 608 F.3d 406, 440 (9th Cir.2010)). Here, Plaintiffs only support their claim with conclusory statements that

under 12(b)(6) standards should be disregarded.  Plaintiff's do not allege a shared common objective between Defendants and the state because there was no shared common objective.  Plaintiffs' complaint strains the bounds of plausibility – that law enforcement in Indiana, with no incentive otherwise, would intentionally conspire with a private investigation firm they had no prior experience with, to deprive a citizen of another state of their liberty.  Therefore, Plaintiff fails to state a claim against Defendants for conspiring to violate its constitutional Fourth Amendment rights.

**J.**     **Plaintiffs' Civil Conspiracy Claim Cannot Survive Rule 12(b)(6) (Count IX).**

To state a claim for civil conspiracy, the plaintiff must establish with particular specificity 'the manner in which a defendant joined in the conspiracy and how he participated in it."  *Id.* (quoting *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984)).   Plaintiffs' earlier complaint was dismissed for failure "to specifically allege an underlying tort and that defendants had an agreement to commit that tort."  (Dismissal Order, p. 10).  Plaintiffs' allegations fail again to meet this standard.  Rather than identify the specific torts and agreements at issue, Plaintiffs instead again broadly assert "Defendants agreed and conspired to, and did, commit tortuous (*sic*) acts against Plaintiffs, which torts have been set forth hereinbefore."  (ECF No. 2 ¶ 156)  As with the prior complaint, Defendants are left to guess which specific torts are included in this alleged conspiracy.   Here, Plaintiffs do not specifically allege an underlying tort or the manner in which Continental and Leapers participated in the conspiracy, and therefore this count should be dismissed.[25]

Moreover, even if the Court finds that Plaintiffs have plausibly alleged a civil conspiracy claim that is based on one (or all) of the other tort claims set forth in the complaint, in the event that the Court dismisses those underlying tort claims, the Court must also dismiss the civil conspiracy claim as it cannot survive on its own.[26]

---

[25]     *See, e.g., Taddeo v. Taddeo*, 2011 WL 4074433, *6 (D. Nev. Sept. 13, 2011) (dismissing civil conspiracy claim where plaintiffs do not "specifically identif[y] the underlying tort alleged).  Where factual allegations in support of the several elements constituting civil conspiracy are not specifically pled, it is "not the duty of the trial court or the appellate court to create a claim which [plaintiff] has not spelled out in his pleading."  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1484 (9th Cir. 1984) (quoting *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 677-78 (5th Cir. 1961)).
[26]     "Civil conspiracy is not an independent cause of action – it must arise from some underlying

**K.**     **Plaintiffs do not Plausibly Allege a Negligence Claim (Count X).**

Plaintiffs' negligence claim fails because they do not sufficiently allege that Continental owed a duty of care to the Plaintiffs.[27]   Rather, they simply allege that "[b]ecause of the foreseeability of injury and damage to Plaintiffs, Continental owed a duty to Plaintiffs to exercise due care to ascertain whether its actions were merited and lawful."  (ECF No. 2 ¶ 162)  Such a duty does not exist as it would deter private citizens and investigators from coming forward and providing information regarding the commission of a potential crime to the police.[28]  Further, Plaintiffs make no allegation that Continental assumed a duty that was created by law or that Continental had a preexisting relationship with Plaintiffs.  It was on this basis that the original complaint was dismissed (Ex. A, p. 11), and it is on this basis that it should be dismissed once again.

DATED May 23, 2017.

CARBAJAL & MCNUTT, LLP


/s/ Matt Wolf
DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
625 South Eighth Street
Las Vegas, Nevada 89101

*Attorneys for Defendants Continental Incorporated, Inc., and Leapers, Inc.*

---

wrong." *Paul Steelman Ltd. v. HKS, Inc.*, 2007 WL 295610, *3 (D. Nev. Jan. 26, 2007); *see Nelson v. Willden*, 2015 WL 4937939, *4 (D. Nev. Aug. 19, 2015) ("In order to successfully allege civil conspiracy, a plaintiff must establish:  (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort.") (citing *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001)).

[27]    Under Nevada law, a claim for negligence must allege four elements: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of plaintiff's injuries; and (4) plaintiff suffered damage.  *Scialabba v. Brandise Const. Co.*, 921 P.2d 928, 930 (Nev. 1996).  The determination of whether the defendant owes a duty of care to the plaintiff is a question of law.  *Id.*

[28]    *See, e.g., Copeland v. K Mart Corp.*, 1998 WL 560759, *4 (9th Cir. Sept. 2, 1998) (applying Oregon law) ("When a crime has been committed against a private citizen in Oregon, that citizen cannot be held liable for damages due to negligence in reporting the crime or instigating an arrest because the citizen owes no duty to investigate the circumstances.").

1

## CERTIFICATE OF MAILING

2      I HEREBY CERTIFY that pursuant to F.R.C.P. 5 on May 23, 2017, I caused service of the

3   foregoing **DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)** by mailing a copy

4   by United States Postal Service, postage prepaid, via email, and/or via electronic mail through the

5   United States District Court's CM/ECF system to the following at their last known address or e-mail:

6   JEFFREY I. PITEGOFF (SBN 5458)
    MORRIS, SULLIVAN, LEMKUL & PITEGOFF, LLP
7   3770 Howard Hughes Parkway, Suite 170
    Las Vegas, Nevada 89169
8   Tel. (702) 405-8100 / Fax (702) 405-8101
    Attorney for Plaintiffs
9

10                                      _/s/ Lisa Heller_____
                                        An Employee of Carbajal & McNutt LLP
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25