**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ADRISH BANERJEE, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CONTINENTAL INCORPORATED, INC., et al.,<br><br>        Defendants. | Case No. 2:17-cv-00466-APG-GWF<br><br>**ORDER (1) GRANTING ANTI-SLAPP MOTION; (2) GRANTING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; (3) GRANTING MOTIONS TO SUPPLEMENT; AND (4) UNSEALING ECF NO. 23**<br><br>(ECF Nos. 7, 8, 41, 50) |

      Plaintiffs Adrish Banerjee and Yan He sue defendants Leapers, Inc. and Continental Incorporated, Inc. for various actions Leapers and Continental took that resulted in Banerjee and He being arrested during a Las Vegas trade show. Leapers claims it owns certain distinctive and source-identifying design markings on gun scopes. Leapers hired Continental, a private investigation firm, to assist in protecting Leapers' claimed markings because Leapers believed others, including the plaintiffs, were selling scopes that copied its designs. Continental conducted a "sting" operation by ordering scopes from the plaintiffs for the sole purpose of having those scopes shipped into Indiana. Continental did so because Indiana has novel law that would allow for counterfeit and forgery criminal charges against the plaintiffs for copying "markings and symbols of identification." Continental and Leapers worked with prosecutors in Indiana, who pursued criminal charges against the plaintiffs. The plaintiffs were arrested on the floor of a Las Vegas gun trade show and extradited to Indiana, where the criminal charges were later dismissed.

      The plaintiffs and others dispute that Leapers has any protectable intellectual property because the markings it claims are distinctive are simply functional aspects of a gun scope. A federal district court in Michigan ruled that Leapers has no trade dress rights in the designs under federal law because the designs were functional, and found Leapers and Continental's conduct to be sufficiently exceptional as to award attorney's fees against them. *See* ECF No. 41-1. However, the Sixth Circuit recently overturned that ruling, holding the district court erred by ruling the

design was non-functional as a matter of law, particularly where discovery remained outstanding. *Leapers, Inc. v. SMTS, LLC*, No. 17-1007, 2018 WL 341880, at *7 (6th Cir. Jan. 10, 2018). Likewise, a federal district court in Indiana has declined to dismiss Leapers' claims in a civil lawsuit in which Leapers sued other parties under Indiana law for forgery, counterfeiting, and theft based on these same "markings and symbols of identification." *See* ECF No. 7-6. In short, this intellectual property dispute has spawned multiple legal actions in multiple jurisdictions.

The case before me was brought by Banerjee and He against Leapers and Continental, asserting a host of state and federal claims arising out of the plaintiffs' arrest.[1] Leapers and Continental move to dismiss, arguing that the plaintiffs' state law claims should be dismissed under Nevada and Indiana's anti-SLAPP statutes. Leapers and Continental also argue the plaintiffs fail to state a claim for any of their causes of action.

The parties are familiar with the facts, so I will not set them forth in detail except where necessary to resolve the motions. I grant the anti-SLAPP motion. I grant in part the motion to dismiss for failure to state a claim.

**I. MOTION TO DISMISS UNDER ANTI-SLAPP (ECF No. 8)**

Leapers and Continental move to dismiss the plaintiffs' state law claims under Nevada and Indiana's anti-SLAPP statutes. They argue that the plaintiffs' claims are based on Leapers and Continental's protected activity of speaking to police and prosecutors in Indiana about the plaintiffs' alleged crimes, and thus must be dismissed. The plaintiffs respond that because Leapers and Continental did not act in good faith in speaking to the Indiana officials, the motion should be denied.

The parties agree that Nevada law applies to all of the plaintiffs' state law claims except the malicious prosecution claim, which is governed by Indiana law because that is where the

---

[1] This case has been consolidated with one brought by Leapers against Banerjee, He, and others for claimed damages based on the alleged violations of Indiana law. *Leapers, Inc. v. Banerjee, et al.*, 2:17-cv-00971-MMD-NJK, ECF No.1. That case was originally filed in Indiana, transferred to this District, and consolidated with this case. Because the pending motions address only Banerjee and He's complaint, I do not address those allegations further.

plaintiffs were criminally prosecuted.² Under Nevada's anti-SLAPP statute, a "person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Nev. Rev. Stat. § 41.650. A defendant may file a special motion to dismiss if the defendant can show "by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.* § 41.660(3)(a). If the defendant makes this initial showing, the burden shifts to the plaintiff to show "with prima facie evidence a probability of prevailing on the claim." *Id.* § 41.660(3)(b).

**A. The Defendants' Initial Burden**

Each of the plaintiffs' state law claims is based on the defendants' communications with law enforcement related to a criminal investigation and the resulting charges and arrests. Reports to police regarding possible criminal activity fall within the anti-SLAPP statute's coverage. Nev. Rev. Stat. § 41.637(3) (defining a "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" to mean, among other things, any "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law . . . which is truthful or is made without knowledge of its falsehood"); *Lawrence v. Krahne*, No. 66595, 2015 WL 5545555, at *1 (Nev. Ct. App. Sept. 16, 2015) (good faith statements to law enforcement about alleged threats were protected activity); *see also Hansen v. Cal. Dep't of Corr. & Rehab.*, 90 Cal. Rptr. 3d 381, 386 (Cal. Ct. App. 2008); *Dickens v. Provident Life & Acc. Ins. Co.*, 11 Cal. Rptr. 3d 877, 882-83 (Cal. Ct. App. 2004).³

Additionally, the defendants have met their initial burden of showing by a preponderance of the evidence that their reports to the police were truthful or without knowledge of falsehood.

---

² The plaintiffs concede dismissal of their Nevada law anti-trust claim. ECF No. 17 at 5.

³ Because "California's and Nevada's anti-SLAPP statutes are similar in purpose and language," the Supreme Court of Nevada looks to California law for guidance on anti-SLAPP questions. *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) (quotation omitted).

Leapers' president, Tina Ding, avers that Leapers created unique designs for its scopes and "used those unique designs to serve as identifiers of Leapers' products." ECF No. 8-3 at 3. Ding further avers that "Leapers at all times believed, and continues to believe, it is the owner of the unique rifle scope designs, including their unique markings, at issue in this matter." *Id.* at 5. Continental's president, Karl Manders, avers that Continental "had no reason to believe Leapers did not own the designs Leapers claimed to own or that the designs were not unique in the marketplace." ECF No. 8-2 at 2-3. A federal district court in Indiana has allowed Leapers' claims based on similar theories to proceed past the dismissal stage. The Sixth Circuit has ruled that further proceedings are needed on whether the designs are non-functional and have secondary meaning. *Leapers, Inc.*, 2018 WL 341880, at *7. Thus, Leapers has shown it has a non-frivolous, good faith belief that it owns the markings. The plaintiffs' contention that Leapers and Continental made false representations to the police and prosecutors lacks evidentiary support, as discussed below.

**B. The Plaintiffs' Burden**

Because the defendants have met their initial burden, the burden shifts to the plaintiffs to show with prima facie evidence a probability of prevailing on their claims. This step entails a "summary-judgment-like procedure." *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016) (quotation omitted).[4] At this stage, I do not "weigh evidence or resolve conflicting factual claims." *Id.* Instead, I ask "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *Id.* I accept the plaintiffs' evidence as true, and I evaluate the defendants' showing "only to determine if it defeats the plaintiff's claim as a matter of law." *Id.*

/ / / /

---

[4] Section 41.662(2) of Nevada's anti-SLAPP statute directs that "determining whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim" means "the plaintiff must meet the same burden of proof that a plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuits Against Public Participation law as of June 8, 2015." Nev. Rev. Stat. § 41.665 (internal quotation marks omitted).

*1. Intentional Interference with Prospective Economic Advantage*

Count one of the complaint alleges the defendants knew of the plaintiffs' business relations with customers, knew that the plaintiffs' customers and potential customers would be at the trade show where they were arrested, and the defendants' actions caused the plaintiffs to be charged and arrested in the middle of a trade show. ECF No. 2 at 14. As to this latter allegation, the plaintiffs assert that Continental knew the plaintiffs' residential and business addresses in Las Vegas yet Continental contacted the Las Vegas Metropolitan Police and influenced them to arrest the plaintiffs during the trade show instead. *Id.* at 12. The plaintiffs allege Continental sent an employee to Las Vegas to facilitate the arrests. *Id.* The plaintiffs contend the defendants acted with the intent to interfere with the plaintiffs' prospective economic opportunities by having them arrested at the trade show in front of their customers, and they have lost sales as a result. *Id.* at 14.

To state a claim for interference with prospective economic advantage under Nevada law, a plaintiff must allege: (1) a prospective contractual relationship between itself and a third party; (2) the defendant knew of the prospective relationship; (3) the defendant intended to harm the plaintiff by preventing the relationship; (4) the defendant's conduct was not privileged or justified; and (5) the plaintiff suffered actual harm as a result. *In re Amerco Deriv. Litig.*, 252 P.3d 681, 702 (Nev. 2011) (en banc). "Privilege can exist when the defendant acts to protect his own interests." *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1226 (Nev. 1987). However, activity is not privileged or justified if there is "resort . . . to unlawful or improper means." *Crockett v. Sahara Realty Corp.*, 591 P.2d 1135, 1137 (Nev. 1979).

The defendants assert their conduct was privileged because Leapers owns intellectual property rights in the scopes and acted to protect those rights. The plaintiffs respond that the defendants were not justified in their actions because: (1) Charlie Shi (who is not a Leapers employee) designed the scalloped feature on the scopes that Leapers is relying on and owned a significant part of the company that manufactured the scopes, Wu Yang Sporting Goods; (2) at the time the defendants acted, no court had determined the scalloped design was protectable; and (3) Leapers did not have a federal trademark but told the police and prosecutors it did.

None of these contentions withstands scrutiny. First, the plaintiffs present no admissible evidence that Shi designed the scalloped feature. Shi's declaration says nothing about designing or owning it. ECF No. 19-1. The plaintiffs attach design documents, most of which are in Chinese, with no authentication of what the documents are. ECF Nos. 19-2; 20-1. Additionally, the plaintiffs' evidence does not show Shi owned any share of Wu Yang. *See* ECF No. 23 at 27. Ding specifically denied under oath that there was an agreement for Shi to own shares in Wu Yang. *Id.* The defendants present evidence that Shi filed suit in China over his alleged ownership interest in Wu Yang but withdrew it when he could not produce evidence in support. ECF No. 37-3. Moreover, designing a feature or owning a share in a manufacturing company does not necessarily equate to ownership in intellectual property. The plaintiffs have not presented any evidence that Shi owned intellectual property rights in the scalloped feature.

Second, the fact that no court had ruled the scalloped feature was protectable when the defendants engaged in the challenged conduct does not nullify the defendants' privilege to act in their own self interests in seeking to protect whatever rights Leapers believes in good faith that it has. There is no evidence that a court had ruled Leapers did not have, and could not have, protectable rights in the scalloped feature at the time the defendants communicated with law enforcement. Although the United States Patent and Trademark Office issued an office action initially denying Leapers' trademark application, that was not a final ruling and Leapers was attempting to overcome the office action. *See* ECF No. 20-5. The USPTO subsequently issued a notice of publication, which gives notice to those who want to oppose registration of the mark. ECF No. 37-4. Moreover, the USPTO's action does not mean Leapers could not have protectable rights under Indiana law.

Finally, the plaintiffs argue the defendants lied to the police and prosecutors by telling them Leapers had a trademark when it did not. But the evidence on which the plaintiffs rely does not support that contention. Instead, the defendants told the police Leapers had "markings and symbols of identification." ECF No. 20-6 at 4. There is no evidence they told law enforcement that they had "trademarks."

The plaintiffs have not made any other argument about why the defendants' conduct was not privileged or justified. Consequently, they have not met their burden of a prima facie factual showing sufficient to sustain a favorable judgment. I therefore grant the defendants' anti-SLAPP motion as to this claim.

### 2. *Defamation*

Count four of the complaint alleges the defendants defamed the plaintiffs by having them arrested at the trade show in front of their customers and others. ECF No. 2 at 16. To establish a prima facie case of defamation, a plaintiff must prove: (1) the defendant made a false and defamatory statement about the plaintiff; (2) "an unprivileged publication to a third person;" (3) "fault, amounting to at least negligence;" and (4) "actual or presumed damages." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993). "Words or conduct or the combination of words and conduct can communicate defamation." *K-Mart Corp. v. Wash.*, 866 P.2d 274, 282-83 (Nev. 1993) (store security officer walking the plaintiff through the store in handcuffs constituted slander per se because that conduct suggested that the plaintiff was a shoplifter), *overruled in part on other grounds by Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (applying Nevada law and holding questions of fact remained regarding whether casino security officer defamed the plaintiff by handcuffing and removing her from the casino in view of other patrons).

The defendants argue the plaintiffs cannot prevail on this claim because the defendants were not involved in the arrest. Instead, they note that the complaint alleges Las Vegas Metropolitan Police officers conducted the arrest. The defendants also argue that there was no falsity and there is no allegation that the defendants' acts were not privileged.

The plaintiffs respond that the defendants saw to it that the plaintiffs were arrested at the trade show and thus are responsible for the public nature of their arrest. As to justification, the plaintiffs' state only that "to suggest that Defendants are somehow justified and/or privileged to take away another individual[']s freedom is mindblowing." ECF No. 17 at 6.

As discussed above with respect to the tortious interference claim, the plaintiffs have not shown the defendants acted without privilege. Additionally, they have not shown falsity. The plaintiffs were subject to arrest based on the Indiana warrants signed by a judge, and the plaintiffs have not raised a genuine dispute that those warrants were procured through false information. I therefore grant the anti-SLAPP motion as to this claim.

### 3. False Light

Count five alleges the defendants caused the plaintiffs to be placed in a false light by having them arrested at the trade show, thus suggesting they had committed a crime. ECF No. 2 at 16. The plaintiffs have not made a prima facie showing that they are reasonably likely to be able to show the defendants knew of or acted in reckless disregard "as to the falsity of the publicized matter and the false light in which the [plaintiffs] would be placed." *Franchise Tax Bd. of State of Cal. v. Hyatt*, 407 P.3d 717, 735-36 (Nev. 2017) (en banc) (quoting Restatement (Second) of Torts § 652E (1977)). As discussed with respect to the plaintiffs' other claims, the plaintiffs have not presented evidence raising a genuine dispute that the defendants' representations to law enforcement were false. I therefore grant the anti-SLAPP motion as to this claim.

### 4. False Arrest and Imprisonment

Count six alleges the defendants, with malice and without probable cause, caused the plaintiffs to be arrested and detained. ECF No. 2 at 17. According to the plaintiffs, the defendants provided the police and the prosecutor with false evidence and the police and prosecutor did not conduct any independent investigation before filing criminal charges against the plaintiffs. The defendants argue the plaintiffs cannot prevail on this claim because the defendants did not arrest the plaintiffs and only provided information to the police, leaving it to the police and prosecutor to decide whether to arrest and prosecute. The plaintiffs respond that the defendants instigated their arrests, and thus are responsible. The plaintiffs also argue, as with their other claims, that the defendants' reports to the police were false.

"To establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (quotation omitted). Probable cause constitutes legal cause or justification. *Id.*; *Grover v. Clark Cty.*, 625 P.2d 85, 86 (Nev. 1981). "Probable cause to arrest exists where the facts and circumstances within the officer's knowledge at the time of arrest would warrant a prudent person in entertaining an honest and strong suspicion that the person arrested has committed a crime." *Deutscher v. State*, 601 P.2d 407, 415 (Nev. 1979). A judge's finding of probable cause is prima facie evidence that probable cause existed. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 49 & n.65 (Nev. 2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). A plaintiff can rebut this presumption by showing that the probable cause finding was induced by wrongful bad faith conduct, such as fraud, perjury, or fabricated evidence. *Jordan*, 110 P.3d at 49; *Awabdy*, 368 F.3d at 1067.

Here, a judge signed the probable cause affidavits authorizing the plaintiffs' arrests for counterfeiting. ECF Nos. 8-7; 8-8. The plaintiffs have not presented evidence raising a genuine dispute that the arrest warrants were procured through fraud, perjury, or other wrongful conduct. As discussed with respect to the other claims, there is no evidence the defendants made false claims to the police or prosecutor. I therefore grant the anti-SLAPP motion as to these claims.

### 5. Negligence

Count ten alleges Continental, as a company providing investigative services, owed a duty to the plaintiffs to exercise due care, that Continental breached that duty by making false communications to the police and prosecutors, and the plaintiffs were damaged as a result. To succeed on a negligence claim, the plaintiff must demonstrate "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244 (Nev. 2011) (quotation omitted). This claim is subject to dismissal for the same reason as the plaintiffs' other claims. The plaintiffs rely on their allegation

that the information Continental provided to the police was false, but they have not presented evidence raising a genuine dispute as to that issue. They therefore have not made a prima facie factual showing sufficient to sustain a favorable judgment because even if a duty exists, the plaintiffs have not shown a breach of that duty. I therefore grant the anti-SLAPP motion as to this claim.

### 6. *Malicious Prosecution*

Count seven alleges the defendants caused the plaintiffs to be wrongfully prosecuted. The parties agree this claim is governed by Indiana's anti-SLAPP statute.

Indiana's anti-SLAPP statute provides for a defense in a civil action if the claim is based on the defendant's act or omission in furtherance of its "right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue," and the defendant acted "in good faith and with a reasonable basis in law and fact." I.C. § 34–7–7–5. Like Nevada, Indiana looks to California law for guidance on what constitutes protected speech and petition activity under the statute. *See Brandom v. Coupled Prod., LLC*, 975 N.E.2d 382, 386 (Ind. Ct. App. 2012). Thus, Indiana likewise would protect good faith reports to the police about alleged criminal behavior. "Good faith" means "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Nexus Grp., Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011) (quotation omitted). Indiana treats anti-SLAPP motions as ones for summary judgment. *401 Pub. Safety v. Ray*, 80 N.E.3d 895, 899 (Ind. Ct. App. 2017).

A plaintiff asserting a malicious prosecution claim under Indiana law must show: (1) the defendant "instituted or caused to be instituted an action against the plaintiff;" (2) "the defendant acted with malice in doing so;" (3) there was no probable cause to institute the action; and (4) the action was "terminated in the plaintiff's favor." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). Like the plaintiffs' other claims, this claim fails because the plaintiffs have not presented evidence raising a genuine dispute that the defendants acted in bad faith. The defendants have presented evidence that they believe Leapers owns the design on the scopes that

is protectable under Indiana law. One federal district court has concluded that Leapers' claim to rights is sufficient to withstand a motion to dismiss. The Sixth Circuit ruled it had not been shown as a matter of law that Leapers did not have trade dress rights in the markings. The plaintiffs have not presented evidence raising a genuine dispute that Leapers does not believe it owns any legally protectable rights in the marks, or that Leapers or Continental provided false information to the police. I therefore grant the anti-SLAPP motion as to this claim.

### 7. Civil Conspiracy

Count nine alleges the defendants engaged in a civil conspiracy. The defendants argue that because the plaintiffs' other tort claims are dismissed, this claim also must be dismissed. The plaintiffs respond that they have pleaded torts, so the conspiracy claim should remain pending.

Under Nevada and Indiana law, to establish a civil conspiracy claim, a plaintiff must show the commission of an underlying tort. *Jordan*, 110 P.3d at 51; *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014). Because the plaintiffs have no viable tort claim, the civil conspiracy claim is also dismissed.

### 8. Discovery

Under Nevada law, if a party opposing an anti-SLAPP motion can show "that information necessary to meet or oppose" the motion "is in the possession of another party or a third party and is not reasonably available without discovery, the court shall allow limited discovery for the purpose of ascertaining such information." Nev. Rev. Stat. § 41.660(4). Although the plaintiffs request the opportunity to conduct discovery, they do not identify what information is lacking, that it is in another party's possession, or what facts they could uncover that would preclude the entry of judgment. The plaintiffs in this case have conducted quite a bit of discovery already. They have (1) transcripts of the depositions of many of the major players in this case that were conducted in a case that raises similar issues (Indiana police detective Robert Wies, Indiana prosecutor Malcolm Gwinn, Leapers president Ding, and Continental president Manders); (2) information obtained from the Indiana police and prosecutor through the Indiana Access to Public Records Act, including communications between Continental and Indiana officials relating

| | |
|---|---|
| 1 | to the probable cause affidavits; and (3) affidavits from third parties. ECF Nos. 2; 8-4; 8-5; 19-1; |
| 2 | 20-6; 20-7; 20-9; 21-2; 23. Nothing suggests that further discovery will alter the result. I |
| 3 | therefore deny the plaintiffs' request for additional discovery in support of their opposition to the |
| 4 | anti-SLAPP motion. |

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (ECF No. 7)

The defendants move to dismiss the plaintiffs' federal claims for failure to state a claim. The plaintiffs concede dismissal of their state and federal anti-trust claims. ECF No. 17 at 5. Thus, the only remaining claim is for alleged Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983. The defendants move to dismiss on the basis that they are not state actors and that the plaintiffs have not alleged the defendants and law enforcement shared a common objective to violate the plaintiffs' constitutional rights. The defendants also contend the plaintiffs have not alleged a violation of their Fourteenth Amendment rights because their claim is governed by the Fourth Amendment. The plaintiffs respond that Indiana law enforcement did not conduct an independent investigation and instead acted at the defendants' behest after the defendants lured the plaintiffs into making a sale in Indiana and then orchestrated the plaintiffs' arrest at the Las Vegas trade show.

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

/ / / /

/ / / /

### A. State Action

To state a claim under § 1983, a plaintiff "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). A private party generally does not act under color of law, but it may be liable under § 1983 if it "conspired or entered joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 445 (quotation omitted). Joint action "exists where a private party is a willful participant in joint action with the State or its agents." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (quotation omitted). The joint action test "focuses on whether the state has so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity." *Franklin*, 312 F.3d at 445 (quotation omitted).

The joint action test requires "a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Id.* "[M]erely complaining to the police does not convert a private party into a state actor." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (quotation omitted); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (single request for police assistance insufficient to show joint action). Where the police undertake an independent investigation and reach their own conclusions about whether to arrest, there is no joint action. *See Collins*, 878 F.2d at 1154-56. However, where a private party and the police engage in sustained joint efforts, such as where the private party "repeatedly request[s] aid by the police to effect [an] eviction, and the police intervene[] at every step," joint action may be found. *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

Taking the plaintiffs' allegations as true, they have alleged sufficient facts of joint action at this stage to survive a motion to dismiss. The plaintiffs allege that a Continental employee used a false name to order guns from the plaintiffs to be shipped into Evansville, Indiana. ECF

### A. State Action

To state a claim under § 1983, a plaintiff "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). A private party generally does not act under color of law, but it may be liable under § 1983 if it "conspired or entered joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 445 (quotation omitted). Joint action "exists where a private party is a willful participant in joint action with the State or its agents." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (quotation omitted). The joint action test "focuses on whether the state has so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity." *Franklin*, 312 F.3d at 445 (quotation omitted).

The joint action test requires "a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Id.* "[M]erely complaining to the police does not convert a private party into a state actor." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (quotation omitted); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (single request for police assistance insufficient to show joint action). Where the police undertake an independent investigation and reach their own conclusions about whether to arrest, there is no joint action. *See Collins*, 878 F.2d at 1154-56. However, where a private party and the police engage in sustained joint efforts, such as where the private party "repeatedly request[s] aid by the police to effect [an] eviction, and the police intervene[] at every step," joint action may be found. *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

Taking the plaintiffs' allegations as true, they have alleged sufficient facts of joint action at this stage to survive a motion to dismiss. The plaintiffs allege that a Continental employee used a false name to order guns from the plaintiffs to be shipped into Evansville, Indiana. ECF

No. 2 at 11. Continental employee Kyle Wilson allegedly provided false statements to the Indiana police claiming that the plaintiffs were selling counterfeit scopes. *Id.* Leapers President Ding sent a notarized letter to the Indiana police and prosecutor stating that Wilson was authorized and trained to identify counterfeit scopes bearing Leapers' intellectual property. *Id.* at 6.

According to the plaintiffs, even though detective Wies knew that Continental worked for Leapers and Leapers had a financial interest at stake, Wies conducted no independent investigation beyond what Continental told him. *Id.* at 11. The plaintiffs allege Wies's probable cause affidavit was based solely on Continental's communications with him in which Wilson falsely accused the plaintiffs of selling counterfeits. *Id.*

According to the plaintiffs, the prosecutor also engaged in no independent investigation or assessment of probable cause. *Id.* at 2, 12. Instead, Continental had a special relationship with the prosecutor, who was "in almost constant contact" with the defendants and "requested, and received from Continental, legal opinion and advice" on prosecuting the plaintiffs. *Id.* at 20. Finally, the plaintiffs allege Continental was able to influence the Las Vegas Metropolitan Police Department to make the arrests at the trade show to embarrass the plaintiffs in front of their customers. *Id.* at 12. The plaintiffs allege Continental was able to give this same prosecutor false information about several other individuals who Continental also falsely accused of selling counterfeits, resulting in their arrests as well. *Id.* at 9, 21-22.

Taking these allegations and all reasonable inferences as true, the plaintiffs allege Continental did more than report criminal activity to the police. The plaintiffs plausibly allege Continental conducted the sting operation for the purpose of being able to bring criminal charges in a friendly jurisdiction where Continental purportedly knew it could provide false information to police and a particular prosecutor who would not independently investigate Continental's allegations. The police and this prosecutor allegedly engaged in a pattern of relying entirely on what Continental told them without conducting any independent investigation to bring criminal charges against the plaintiffs and other alleged counterfeiters. The prosecutor allegedly was in

constant communication with Continental, and sought and received legal advice from Continental regarding the plaintiffs' criminal prosecution. These allegations plausibly allege the police and prosecutor so far insinuated themselves into a position of interdependence with Continental (who was acting as Leapers' agent), that the defendants were joint participants in the arrests and prosecution. I therefore deny this portion of the motion.

### B. Failure to State a Claim

The defendants argue the plaintiffs have not plausibly alleged a Fourteenth Amendment violation because their claim is governed by the Fourth Amendment. The plaintiffs do not respond to this argument. As I understand it, the reference to the Fourteenth Amendment is based on that amendment's incorporation of the Fourth Amendment as against the States, and is not a standalone constitutional violation. *See Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009).

The title of this section of the defendants' motion states that the plaintiffs have failed to allege a violation of their Fourth Amendment rights as well, and the defendants include some Fourth Amendment law. *See* ECF No. 7 at 20-22. However, there is no argument as to why the plaintiffs have not alleged a Fourth Amendment violation. The defendants instead argue the plaintiffs have not alleged a conspiracy to violate their rights. The plaintiffs need not allege a conspiracy if they can allege joint action, which they have done. I therefore deny this portion of the motion. While this may seem contradictory to my ruling on the anti-SLAPP motion, the motion to dismiss is evaluated on a different standard, taking the plaintiffs' allegations as true, and addressing only the arguments the defendants have raised to attack the § 1983 claim.

## III. UNSEALING

The plaintiffs previously moved to seal portions of their response to the defendants' anti-SLAPP motion and to file some exhibits under seal. ECF No. 22. Magistrate Judge Foley denied that motion and directed the defendants to file a motion to seal by July 14, 2017, if there was a basis to keep the plaintiffs' opposition, or portions thereof, under seal under the principles of *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006). ECF No. 32. The defendants did not file a motion to seal. I therefore direct the clerk of court to unseal ECF No. 23.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' special motion to dismiss (anti-SLAPP) **(ECF No. 8) is GRANTED** and the defendants' motion to dismiss for failure to state a claim **(ECF No. 7) is GRANTED in part**. The plaintiffs' only remaining claim is under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that the plaintiffs' motion for leave to file supplemental authority **(ECF No. 41)** and the defendants' motion for leave to supplement **(ECF No. 50) are GRANTED**.

IT IS FURTHER ORDERED that the clerk of court shall **unseal ECF No. 23.**

DATED this 1st day of February, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE